SOUTHWEST PROPERTIES, L.P., a Delaware Limited Partnership; MF–SWP Joint Venture, a Texas Joint Venture, Southwest Property Trust, Inc. f/k/a Southwestern Property Trust, Inc., SWP Properties I, L.P. and SWP Developers, Inc., Appellants,

v.

LITE–DEC OF TEXAS, INC., Appellee.

No. 04–98–00146–CV.

Court of Appeals of Texas, San Antonio.

Dec. 23, 1998.

Rehearing Overruled Jan. 20, 1999.

Fred D. Wilshusen, R. Sean McDonald, Thomas, Feldman & Wilshusen, L.L.P., Dallas, for appellant.

Tim Tynan, Law Office of Tim Tynan, San Antonio, for appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice and CATHERINE STONE, Justice.

## OPINION

CATHERINE STONE, Justice.

This is a case of first impression involving the Sham Contract provision found in section 53.026 of the Texas Property Code. The parties dispute whether section 53.026 provides a method of allocating liability to a property owner or whether the provision applies only for purposes of filing and perfecting a mechanic's lien. Because we find section 53.026 does not control liability, we reverse the judgment of the trial court and render judgment in favor of appellants.

### FACTUAL AND PROCEDURAL BACKGROUND

MF–SWP, a joint venture of Martin Fein Interests and Southwest Properties Trust, acted as developer for three apartment projects: Promontory Pointe, Ashley Oaks I, and Ashley Oaks II. MF–SWP hired Martin Fein Interests Construction (MFI Construction) to act as general contractor on these projects. MFI Construction, in turn, hired, Lite–Dec to complete certain tasks on all three projects.

On August 16, 1995, MFI Construction was replaced by Southwest Properties Development (SWP), a branch of Southwest Properties Trust, as general contractor on the projects. On August 21, SWP refused to pay Lite–Dec money it was due because SWP had received lien notices from Lite–Dec's subcontractors. SWP also asserted that some of Lite–Dec's work on a pool deck and concrete columns was unacceptable and that Lite–Dec billed SWP for services that Lite–Dec had not completed. Because SWP refused to pay Lite–Dec, Lite–Dec refused to continue working after August 21. Lite–Dec filed liens on all three projects for a total of $121,350.11.

After Lite–Dec ceased working, SWP hired other subcontractors to complete the projects. SWP brought suit, seeking to invalidate the Lite–Dec liens and claiming that after deducting the remaining balance in Lite–Dec's subcontracts, SWP spent $80,567.21 to complete Promontory Point and Ashley Oaks II. Lite–Dec counterclaimed for amounts it believed SWP still owed for services performed. After trial to a jury, the court awarded Lite–Dec its unpaid billings ($78,337.75) from the Promontory Pointe project and attorney fees ($28,000). A directed verdict in favor of SWP was granted for Ashley Oaks I and II projects.

### THE SHAM CONTRACT STATUTE

■ The interpretation of a statute is a question of law subject to a *de novo* review by the appellate court. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994); *Kazmir v. Suburban Homes Realty*, 824 S.W.2d 239, 243 (Tex.App.—Texarkana 1992, writ denied). This case requires us to interpret a portion of the Sham Contract provision, which provides in pertinent part:

(a) A person who labors, specially fabricates materials, or furnishes labor or materials under a direct contractual relationship with another person is considered to be in direct contractual relationship with the owner and has a lien as an original

contractor, if: (1) the owner contracted with the other person for the construction or repair of a house, building, or improvements and the owner can effectively control that person through ownership of voting stock, interlocking directorships, or otherwise.

TEX. PROP.CODE ANN. § 53.026(a) (Vernon Supp.1998). Lite–Dec argues that by providing for a person "to be in a direct contractual relationship," the statute, in essence, causes the owner to be liable to the subcontractor as if the two had entered a contract. By contrast, SWP contends the phrase does not provide for liability but is only a term of art used throughout the statute, and that this provision is specifically used to determine filing and perfecting requirements for a mechanic's lien. Because Lite–Dec argues for liability based solely on section 53.026, its entire recovery is contingent on whether this provision can, in fact, be used to establish liability.

█ In interpreting a statute, courts are permitted to presume the Legislature intended just and reasonable results. TEX GOV'T CODE ANN. § 311.021(3) (Vernon 1988); *Perkins v. Groff*, 936 S.W.2d 661, 664 (Tex. App.—Dallas 1996, writ denied). While statutes that are in derogation of the common law should not be strictly construed, a statute that creates a liability unknown at common law will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex.1993) (citing TEX. GOV'T CODE ANN. § 312.006(b)); *Dutcher v. Owens*, 647 S.W.2d 948, 951 (Tex.1983). Additionally, while the heading, title, or subchapter of a section should not be used to limit or expand the meaning of a statute, see TEX. GOV'T CODE ANN. § 311.024 (Vernon 1988), in absence of language clearly indicating a contrary intent, a word or phrase used in different parts of a statute is presumed to have the same meaning throughout, and where the meaning in one instance is clear, this meaning will be attached in all other instances. *City of Dallas v. Watkins*, 651 S.W.2d 923, 925 (Tex. App.—Dallas 1983, no writ), *superseded by statute on other grounds, City of Dallas v. Arnett*, 762 S.W.2d 942 (Tex.App.—Dallas 1988, writ denied).

█ Few courts have interpreted section 53.026 of the Texas Property Code, but those that have considered this provision have used it to control filing or notice requirements. SWP and Lite–Dec point to two cases, decided within a week of each other, that considered the application of section 5452–1 (now section 53.026): *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262 (Tex. 1974) and *Da–Col Paint Mfg. Co. v. American Indem. Co.*, 517 S.W.2d 270 (Tex.1974). In both cases, the court considered the statute for purposes of filing a materialman's lien, not liability. *See First Nat'l Bank*, 517 S.W.2d at 264 (noting that the case concerned the validity and priority of statutory and constitutional materialman's liens); *Da–Col Paint Mfg. Co.*, 517 S.W.2d at 274 (discussing the importance of original contractor status for purposes of giving notice and perfecting a statutory lien). In *Da–Col Paint Mfg. Co.*, the Court provided some insight into the purpose of the Sham Contract statute when it stated:

> Prior to 1965, it was common practice for owners to preclude those with whom they dealt from enjoying the more advantageous position of original contractor by assuming that position themselves through a sham original contractor. In 1965, the Legislature discouraged the practice by passing [the statute] which gives the subcontractor ... his true status of original contractor....

517 S.W.2d at 273. The court then concluded that under the statute it would be illogical to require that notice be given to the owner in his capacity as owner and also as original contractor. *Id.* These two cases are representative of Texas case law in that no court has used section 53.026 to determine liability.

The Sham Contract provision is part of Chapter 53 of the Texas Property Code entitled "Mechanic's, Contractor's, or Materialman's Lien" and falls under Subchapter B: Persons Entitled to Lien; Subject Property. The other provisions listed in this subchapter deal with who is entitled to a lien, what property the lien covers, what payment the lien secures, and the amount of the lien. *See* TEX. PROP.CODE ANN. §§ 53.021–.025 (Vernon

1995 & Supp.1998). Provisions within this chapter reveal that "original contractor" is not merely surplusage to "direct contractual relationship with the owner," but is a term of art used throughout the chapter. By using both phrases, the Legislature ensured that claimants would not have liens voided over a failure to meet specific notice requirements, which are tied to whether that person is an original contractor. Applying this statute as only controlling lien requirements gives a subcontractor certain benefits that normally only an original contractor would receive. The Texas Property Code is replete with instances where the timing of notices is tied specifically to whether a claimant is an original contractor or a subcontractor.[1]

While the language of section 53.026 makes an unqualified statement: "a person ... is considered to be in direct contractual relationship with the owner," to construe this language as placing contractual liability on an owner would simply produce unreasonable results. In essence, this interpretation would set new requirements for alter ego liability. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(A) (Vernon Supp.1998) (requiring actual fraud and direct personal benefit to pierce the corporate veil). Thus, considering Chapter 53 in its entirety, it is clear that the only reasonable and just interpretation of section 53.026 is to construe "in a direct contractual relationship" as an effort to effectuate the timetables for filing liens and not an effort to control liability of an owner.

Because we find section 53.026 does not control liability, SWP's first point of error is sustained. In light of our disposition of the first point of error, we need not address the remaining points. The judgment of the trial court is reversed and judgment is rendered that Lite–Dec take nothing.

---

1. *See* TEX. PROP CODE ANN. § 53.055(b) (Vernon 1995) ("if the person is not an original contractor, that person must send a copy of the lien affidavit to the original contractor"); *id.* § 53.056(c) ("if the lien claim arises from the debt occurred by the original contractor, the claimant must give notice to the owner"); *id.* § 53.056(b) ("if the lien claim arises from a debt incurred by a subcontractor, the claimant must also give the original contractor written notice of the unpaid balance"); *id.* § 53.057 ("if the claimant furnished labor and materials under an agreement with an original contractor or a subcontractor, they must give a retainage notice to the owner by the fifteenth day of the second month following the time they enter into the agreement"); *id.* § 53.058(b) ("if indebtedness for specially fabricated items is incurred by a person other than the original contractor, the claimant must give notice within that time to the original contractor of the specially fabricated materials agreement"); *id.* § 53.252–.253 (Vernon Supp.1998) (detailing special notices regarding residential construction which are likewise tied to whether the claimant is an original contractor). *See also Da–Col Paint Mfg. Co.*, 517 S.W.2d at 273 ("A subcontractor does not have a constitutional lien and faces a more onerous burden [than an original contractor] in perfecting a statutory lien.").