COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-013-CV
  
  
THE 
STATE OF TEXAS                                                                  STATE
  
V.
  
HALTOM 
MEDICAL INVESTORS, L.L.C.                                       APPELLEE
D/B/A 
HALTOM CONVALESCENT CENTER
  
  
------------
 
FROM 
THE 17TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        The 
State of Texas, Appellant, appeals from an order granting Appellee Haltom 
Medical Investors, L.L.C. d/b/a Haltom Convalescent Center’s plea to the 
jurisdiction and dismissing the State’s case with prejudice.  In two 
issues, the State claims that 1) the trial court erred by failing to recognize 
that section 2.60(b) of House Bill 2292 is a specific savings clause and 
incorrectly applied the general savings clause, and 2) the Texas Department of 
Human Services’ (DHS) assessment of both federal and state civil penalties was 
made under the prior version of section 242.070 of the health and safety code 
before the new amendment took effect on September 1, 2003, and the savings 
clause directly impacts those penalties assessed prior to September 1, 
2003.  We disagree, and therefore, affirm the trial court’s judgment.
Background
        DHS 
is the state agency that regulates nursing facilities by ensuring minimum 
standards of care regarding health, safety, and comfort of the nursing home 
residents.[1]  There are several ways that DHS 
regulates these facilities: it requires the facilities obtain a license; 
conducts inspections, surveys, and investigations of the facilities; and 
enforces rules and minimum standard regulations.[2]  
After DHS completes its inspection, a regional enforcement team meets to 
determine if it believes that a violation has occurred and what penalties, if 
any, should be recommended.  DHS enforces its regulations through 
administrative penalties,[3] federal civil money 
penalties, and state civil penalties.[4]  It is 
not the regional team, but DHS state office staff or the Centers for Medicare 
and Medicaid Services (CMS) that impose the penalties against a facility.  
If the facility does not agree with the recommendation, it has the right to 
appeal.[5]
        The 
three types of penalties are assessed differently.  Administrative 
penalties are assessed by the DHS commissioner or the commissioner’s designee 
only after “the person charged with the violation consents to the 
administrative penalty recommended by the department, does not timely respond to 
a notice sent under Subsection (c) or (e), or fails to correct the violation to 
the department’s satisfaction.”[6]  Federal 
civil money penalties are based on an alleged certification or Medicare/Medicaid 
violation.  The regional enforcement team then makes its recommendation to 
CMS, which either accepts, rejects, or modifies the recommendation.  It is 
CMS that notifies a nursing facility that a specific penalty has been 
recommended to be imposed.  Haltom contends that only after the nursing 
facility has either consented to the penalty or all appeal rights have been 
exhausted can a federal civil money penalty be assessed.  Based on an 
alleged licensure violation, the DHS regional enforcement team can recommend 
state civil penalties.  If the regional director agrees that a state civil 
penalty should be sought, the nursing facility is notified that DHS is 
recommending referral to the Attorney General’s Office for imposition of civil 
penalties.[7]
        This 
case focuses on state civil penalties. In 2002, with residents residing in the 
facility, Haltom decided to renovate.  In July 2002, DHS inspected the 
facility and found numerous violations. Specifically, the violations included 
numerous safety system devices that were inadequate such as sprinkler system 
coverage, fire escape pathways, fire barriers, and exposed construction 
materials, which posed health and safety hazards for the residents.  DHS 
made a recommendation to CMS that a $3,050 per-day federal civil money penalty 
be imposed on Haltom for the violations.  CMS agreed with the findings and 
the penalty recommended by DHS.  Thereafter, Haltom waived its right to 
appeal, and CMS sent notification to Haltom of the acceptance of its waiver of 
appeal rights.  The federal civil money penalty in the amount of $28,350 
was reduced to $18,427.50 and paid by Haltom. On January 14, 2003 DHS referred 
this matter to the Office of the Attorney General of Texas (OAG).  The 
letter sent to the OAG stated “Please file suit for civil penalties and any 
other relief which may be appropriate.”  On September 17, 2003 the State 
of Texas filed suit on behalf of DHS seeking state civil penalties against 
Haltom under chapter 242 of the Texas Health and Safety Code.  Haltom filed 
a plea to the jurisdiction, which the court granted and the court dismissed the 
State’s suit with prejudice.  Thereafter, the State filed this appeal.
        In 
this case, we are presented with two overriding issues, the proper 
interpretation of the term “assess” found in section 242.070 of the Texas 
Health and Safety Code, and whether or not the State “assessed” civil 
penalties before or after September 1, 2003.
Section 242.070 
of the Texas Health and Safety Code[8]
        Before 
we address the issues presented in this case, a brief overview of the pertinent 
statute is necessary.  In 2003, the Texas Legislature amended section 
242.070 of the Texas Health and Safety Code by enacting Texas House Bill 2292.[9]  Prior to the legislative change, section 242.070 
read:
 
The department may not assess more than one monetary penalty under this chapter 
for a violation arising out of the same act or failure to act, except as 
provided by Section 242.0665(c).  This section does not prohibit the 
department from assessing a monetary penalty under this chapter and a monetary 
penalty under Chapter 32, Human Resources Code, for the same act or failure to 
act.[10]

After 
the legislative change, section 242.070 now reads:


The department may not assess more than one monetary penalty under this chapter 
and Chapter 32, Human Resources Code, for a violation arising out of the same 
act or failure to act, except as provided by Section 242.0665(c).  The 
department may assess the greater of a monetary penalty under this chapter or a 
monetary penalty under Chapter 32, Human Resources Code, for the same act or 
failure to act.[11]

House 
Bill 2292 contained the above amendment and the following provision:  
“The change in law made by this section to Section 242.070, Health and Safety 
Code, applies only to a penalty assessed on or after the effective date of this 
section.”[12]
        Prior 
to the statutory change, DHS was authorized to assess up to two monetary 
penalties against a nursing facility that was in violation of the regulations; 
however, after the amendment DHS can only assess one monetary penalty against a 
nursing facility for each violation arising out of the same act.  The State 
argues that chapter 242 should be construed broadly to effectuate the protection 
of all nursing facility residents and that by deviating from basic principles of 
statutory interpretation, the district court failed to apply the correct version 
of the statute to this case.
Assessment of 
Penalties
        In 
its second issue the State contends that DHS assessed state civil penalties 
against Haltom in July 2002, and the trial court erred by dismissing its suit 
with prejudice.  Statutory construction is a question of law that we review 
de novo.  Tex. Dep’t of Transp. v. Needham, 82 S.W.3d 314, 318 
(Tex. 2002).  We are not bound by an agency’s interpretation of a statute 
that it administers or enforces.  See Rylander v. Fisher Controls 
Int’l, Inc., 45 S.W.3d 291, 299 (Tex. App.—Austin 2001, no pet.).  
Our primary goal is to ascertain and effectuate the legislature's intent. Albertson's, 
Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999).  When construing a 
statute, we ascertain the Texas Legislature's intent from the plain meaning of 
the actual language used. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 
2002).  Additionally, the primary rule in statutory interpretation is that 
a court must give effect to legislative intent, considering the language of the 
statute, as well as its legislative history, the objective sought, and the 
consequences that would flow from alternative constructions.  Crown Life 
Ins. Co. v. Casteel, 22 S.W.3d 378, 383 (Tex. 2000) (op. on reh’g).
        In 
our attempt to find the intended meaning of the disputed statutory term, we are 
mindful that the Code Construction Act[13] erects a 
presumption that a just and reasonable result was intended; and, the act 
authorizes us to consider the objective sought to be obtained, former statutory 
provisions, including laws on the same or similar subjects, and the consequences 
of a particular construction of the disputed term.[14]  
The State in this case argues that “to assess” and “to seek” are 
equivalent.  Because “assess” is not defined by the statute, we look 
first to its plain meaning beginning with the commonly understood 
definition.  See Fitzgerald v. Advanced Spine Fixation Sys., Inc., 
996 S.W.2d 864, 865-66 (Tex. 1999).  If a statute’s meaning is 
unambiguous, we generally interpret the statute according to its plain 
meaning.  Id. at 865.  Words and phrases are to be read in 
context and given their common, everyday meaning unless they have acquired a 
technical or particular meaning.  Tex. 
Gov’t Code Ann. § 311.011 (Vernon 1998).  The plain and common 
dictionary definitions of the term “assess” includes:
  
1) to determine the rate or amount of (as a tax, charge, or fine)
 
2a) 
to determine the amount of and impose (as a tax, charge, or fine) according to 
an established rate or apportionment
 
2b) 
to subject to a tax, charge, or levy so determined
 
3) 
to make an official valuation or estimate of
 
4) 
to analyze critically and judge definitely the nature, significance, status, or 
merit of: determine the importance, size, or value of.[15]

        The 
State argues that since DHS determined whether or not to assess penalties and 
made the recommendation of what penalties to seek before September 1, 2003, it 
properly assessed the relevant penalties prior to the revised statute’s 
effective date.  The State’s argument finds support under the first 
definition set out above.  However, Haltom points to the definition listed 
above in 2a and contends that the State did not assess penalties prior to 
September 1, 2003.  In support of its argument, it argues that an example 
of a penalty being properly assessed against a facility is when DHS gave notice 
to them on July 12, 2002 of the decision to pursue a penalty and provided them 
with a definite and determined amount.  In contrast to the current issue, 
Haltom argues that the penalty at issue in this case was not assessed prior to 
September 1, 2003 and still has not been assessed.  Haltom argues that no 
notice or amount has been given concerning the penalty at issue, and that a 
penalty that has not, and cannot be calculated is not a penalty that has been 
assessed against a facility.  Therefore, Haltom contends that the State 
does not meet the definition found in 2a above.  Furthermore, Haltom points 
out that suit was not filed by the State until September 17, 2003.
        Because 
both definitions of the word “assess” could apply in the present case it is 
apparent that the term “assess” is ambiguous as applied to these facts and 
we cannot conclude the meaning from the section of the statute itself.  
Therefore, we also consider two additional uses of the term in this case.  
First, section 242.067(g) of the health and safety code uses “assess” in a 
chronological context. Tex. Health & Safety Code Ann. § 
242.067(g).  It states:
  
If the person charged with the violation consents to the administrative penalty 
recommended by the department, does not timely respond to a notice sent under 
Subsection (c) or (e), or fails to correct the violation to the department’s 
satisfaction, the commissioner or the commissioner’s designee shall assess 
the administrative penalty recommended by the department.

Id. 
(emphasis added).  Rules of statutory construction regarding a statute 
relating to the same subject matter are intended to be construed consistently 
and to operate in harmony.  Moses v. Fort Worth Indep. Sch. Dist., 
977 S.W.2d 851, 853 (Tex. App.—Fort Worth 1998, no pet.).  Unless there 
is language clearly indicating a contrary intent, words or phrases used in 
different parts of a statute are presumed to have the same meaning throughout, 
and where the meaning in one instance is clear, this meaning will be attached in 
all other instances.  S.W. Props., L.P. v. Lite-Dec of Tex., Inc., 
989 S.W.2d 69, 71 (Tex. App.—San Antonio 1998, pet. denied).
        Second, 
DHS’ interpretation and application of the term “assess” is found in its 
annual report to the Texas Legislature.  See Texas Department of 
Human Services, Fiscal Year 2002 Long 
Term Care Regulatory Annual Report (Feb. 2003) at 32.  We examine 
the language in reviewing when and how the agency assesses penalties.  The 
language is as follows:
  
Penalties assessed are the final actions after the appeal process has been 
completed (or an agreement to settle has been reached) and a final amount has 
been decided.  The facility is notified of the amount to be paid.  
There may be a lump sum payment or a monthly payment scheme agreed upon during 
the appeal or settlement process.

Id.  
Given our commitment to properly interpret statutory language we cannot read 
“to assess” to mean the same as “to seek” as argued by the State.  
Looking at section 242.070's objectives, a similar provision in the health and 
safety code, and the interpretation and application of the term by DHS, these 
factors support the conclusion that the understanding of the term “assess” 
without more cannot simply mean to determine.  The State’s second issue 
is overruled.
Savings Clause
        In 
its first issue the State argues that the change in law made by section 242.070 
applies only to penalties assessed on or after September 1, 2003, and that the 
trial court erred by incorrectly applying the amended statute because the 
penalties at issue in this case were assessed prior to September 1, 2003.  
Furthermore, the State contends that section 2.60(b) of House Bill 2292 is a 
specific savings clause that acts to save pending matters such as the penalties 
at issue in this case.  Because we hold that DHS did not “assess” state 
civil penalties prior to September 1, 2003, we need not address whether section 
2.60(b) is a specific savings clause.
Conclusion
        We 
affirm the judgment of the trial court.
 
 
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
  
  
PANEL 
B:   HOLMAN, WALKER, and MCCOY, JJ.
 
DELIVERED: 
December 9, 2004


NOTES
1.  
Tex. Health & Safety Code Ann. 
§ 242.002(4) (Vernon 2001), § 242.037 (Vernon Supp. 2004-05); 40 Tex. Admin. Code § 19.2004(a) (2002) 
(Social Services and Assistance).
2.  
Tex. Health & Safety Code Ann. 
ch. 242 (Vernon 2001 & Supp. 2004-05).
3.  
Id. § 242.066 (Vernon 2001).
4.  
Id. § 242.065 (Vernon Supp. 2004-05).
5.  
42 C.F.R. §§ 488.330(d)(4), (e).
6.  
Tex. Health & Safety Code Ann. 
§ 242.067(g) (Vernon 2001).
7.  
Id. § 242.065(f).
8.  
Id. § 242.070 (Vernon Supp. 2004-05).
9.  
Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.60(a), sec. 242.070, 2003 
Tex. Gen. Laws 611, 671 (effective Sept. 1, 2003).
10.  
Act of May 28, 1997, 75th Leg., R.S., ch. 1159, § 1.18, sec. 242.070, 1997 Tex. 
Gen. Laws 4363, 4374.
11.  
Tex. Health & Safety Code Ann. 
§ 242.070.
12.  
Id.
13.  
Tex. Gov’t Code Ann. § 311.001 
(Vernon 1998).
14.  
Id. § 311.023.
15.  
Webster’s Third New International 
Dictionary 131 (1981).