**DA–COL PAINT MANUFACTURING COMPANY, Petitioner,**

v.

**AMERICAN INDEMNITY COMPANY, Respondent.**

No. B–4704.

Supreme Court of Texas.

Dec. 11, 1974.

Ungerman, Hill, Ungerman, Angrist, Dolginoff & Teofan, Edward S. Koppman, Dallas, for petitioner.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Dallas, for respondent.

POPE, Justice.

The legal questions presented are whether a supplier of paint gave timely notice to the proper parties such as will support its claim against the surety on a Hardeman Act payment bond, and whether the claimant may recover against the surety on a bond executed by a sham contractor as principal.

Da-Col Paint Manufacturing Company instituted suit against C. Hayman Construction Company for payment for paint it delivered to Hayman. Da-Col also joined as defendants, Shiloh Terrace Apartments, a partnership, and American Indemnity Company, the surety upon the apparent original contractor's Hardeman Act bond. Da-Col recovered a joint and several judgment on a jury verdict against Hayman and American Indemnity, but the court of civil appeals reversed and rendered judgment that Da-Col take nothing against American Indemnity. 508 S.W.2d 944. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

Shiloh Terrace Apartments, a partnership composed of Homer Caston, Jr., G. C. Butler and J. E. Andrews, entered into a contract with Pala, Inc., whereby Pala agreed to construct an apartment complex for Shiloh Terrace. Pala's stockholders were Caston (50%), Butler (49%) and Butler's wife (1%). Pala subcontracted the painting work to C. Hayman Construction Company, to whom plaintiff Da-Col, in September, 1969, supplied paint worth $3,687.42 and in October, 1969, supplied paint worth $6,634.11. The arrangement, at the beginning, therefore, was in the sequence of Shiloh (owner), Pala (original contractor), Hayman (subcontractor), Da-Col (materialman).

Pala, as the original contractor, executed a Hardeman Act payment bond with American Indemnity as its surety. The purpose of such a bond is to insulate the owner from suits and his property from liens by the substitution of the payment bond. Vernon's Tex.Rev.Civ.Stat.Ann. art. 5472d (Supp.1974). When Hayman failed to pay for the September and October deliveries of paint, Da-Col, on November 26, 1969, gave notice by certified mail to Shiloh, the owner, and mailed copies to Caston and Butler, but did not send a notice to Pala, the original contractor.

Da-Col obtained a judgment upon a jury verdict jointly and severally against Hayman and American Indemnity in the amount of $16,530.53. The court of civil appeals, in reversing the judgment, held that Da-Col's claim against American Indemnity failed because Da-Col did not give notice of its claim to Pala, the original contractor within thirty-six days, citing Article 5453(2)(b)(1).

The statutes which are here applicable are Article 5472d, which permits the sub-

stitution of a Hardeman Act payment bond to secure the payment of liens and claims; Article 5453, which states the general rules for securing a lien; and Article 5452–1, the sham contractor statute.

Article 5472d provides that an original contractor may execute a bond in favor of the owner which will operate to insulate the owner and his property from suits for payment for labor or materials. Any claim for payment for labor or materials must be satisfied from the payment bond. A claimant such as Da-Col, however, must protect its claim on the bond by giving the notice required by Article 5472d, which incorporates by reference the notice requirements of Article 5453.

Article 5453(2)(b)(1), Tex.Rev.Civ. Stat.Ann. (Supp.1974) provides that written notice of an unpaid balance due for labor or materials must be given to the owner within ninety days and to the original contractor within thirty-six days, both periods to run after the tenth day of the month following the month in which the materials were delivered or the labor performed.[1] While it is undisputed that timely notice was sent to the owner, Shiloh, American Indemnity argues that Da-

Col's failure to send notice to the original contractor, Pala, defeats Da-Col's claim on Pala's bond.

 Da-Col urges that it can assert its claim against the Hardeman Act bond because it complied with the notice requirements of Article 5453. It argues that the sham contractor statute, Article 5452–1, operated to relieve them from the requirement of giving notice to Pala. The court of civil appeals held that the sham contractor statute does not affect the notice requirements of Article 5453 and that Da-Col's failure to give notice to Pala was fatal to its claim on the bond. We hold that where Article 5452–1 applies, notice to the owner is also notice to the sham original contractor.

The jury found that the original contractor, Pala, was controlled by the owner, Shiloh. This finding made Article 5452–1 applicable. Article 5452–1 is as follows:

Whenever any owner of real property shall enter into any contract with a corporation for the construction or repair of any house, building or improvements thereon, and said owner can effectively control the corporation with whom such

---

1. The lien provided for in Article 5452 may be fixed and secured in the following manner:

1. (Pertains to filing of affidavit claiming lien)

2. If the claimant for such lien is other than an original contractor, such claim shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims:

. . . .

b. Excepting instances of retainage for which notices have been given in accordance with the preceding subparagraph, the claimant shall give the applicable notice or notices described, as follows:

(1) Where the claim consists of a lien claim arising from a debt incurred by a subcontractor, the claimant shall give written notice of the unpaid balance of such claim to the original contractor not later than thirty-six (36) days after the tenth (10th) day of the month next following each month in

which claimant's labor was done or performed in whole or in part or his material delivered in whole or in part; and claimant shall give a like notice to owner not later than ninety (90) days after the tenth (10th) day of the month next following each month in which the claimant's labor was done or performed in whole or in part or his material delivered in whole or in part.

(2) *Where the claim consists of a lien claim arising from a debt incurred by the original contractor, no such notice need be given to the contractor but notice to the owner, as prescribed in paragraph 2b(1) of this Article will be sufficient.*

Such notices shall be sent by certified or registered mail, addressed to the owner, and where required by this Article to the original contractor, at their last known business or residence address. A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph

. . . .

[Emphasis added.]

contract is made, through the ownership of voting stock therein, interlocking directorships or otherwise . . . then . . . *any person, firm or corporation who, under a direct contractual relationship with said . . . corporation* and who may . . . furnish labor or material to be used in the prosecution of the work under such contract *shall be deemed to be in a direct contractual relationship with the owner and may perfect his lien against the property in the same manner as any other original contractor.* [Emphasis added.]

■ Article 5452-1 was designed to elevate from subcontractor or materialman to original contractor any party dealing directly with an original contractor, where that original contractor acquired his status by virtue of a sham relationship with the owner. Whether one is considered an original contractor or a subcontractor is of fundamental importance. A subcontractor does not have a constitutional lien, First Nat'l Bank v. Lyon-Gray Lumber Co., 110 Tex. 162, 217 S.W. 133 (1919), and faces a more onerous burden in perfecting a statutory lien. Tex.Rev.Civ.Stat.Ann. art. 5453 (Supp.1974).

Prior to 1965, it was a common practice for owners to preclude those with whom they dealt from enjoying the more advantageous position of original contractor by assuming that position themselves through a sham original contractor. Youngblood, Mechanics' and Materialmen's Liens in Texas, 26 SW.L.J. 665, 671 (1972). In 1965, the Legislature discouraged the practice by passing Article 5452-1, which gives the subcontractor or materialman his true status of original contractor where the owner is found to control the nominal or sham original contractor.

American Indemnity is correct in its contention that Article 5452-1 is not a notice statute. Fundamental to the operation of the statute, however, is the recognition

that the owner and sham contractor are one and the same. This being so, it is illogical to require that notice be given the owner in his capacity as owner, and a separate notice given him in his capacity as original contractor.

■ It was also unnecessary for Da-Col to give a thirty-six day notice to Hayman, the original contractor by operation of law. Article 5453(2)(b)(2) provides:

Where the claim consists of a lien claim arising from a debt incurred by the original contractor, no such notice need be given to the contractor but notice to the owner . . . will be sufficient.

Since the claim here was for a debt incurred by Hayman, notice to Shiloh only was required.

■ A second question presented in this case is whether, since C. Hayman Construction Company became an original contractor by virtue of Article 5452-1, Da-Col can have any right of recovery upon the bond of another original contractor, Pala, Inc. Fidelity & Deposit Co. v. Felker, 469 S.W.2d 389 (Tex.1971), and Trinity Universal Ins. Co. v. Barlite, Inc., 435 S.W.2d 849 (Tex.1969) hold that one original contractor and those contracting with him cannot recover upon the bond of another original contractor. Upon this authority, the court of civil appeals held that Da-Col, contracting with Hayman who became an original contractor by implication of law pursuant to Article 5452-1, could not recover upon the bond of Pala, Inc., another original contractor. We hold that Da-Col does have a right of recovery on the Pala, Inc. bond.

■ The fallacy of applying *Felker* and *Barlite* to the facts here is demonstrated by the fact that to do so would be to reward the owner for entering into a sham relationship. At the time of contracting

274

with the sham original contractor, parties such as Hayman may not be aware of the sham relationship between the owner and original contractor. They then assume their position to be that of subcontractor or materialmen and, as such, will not execute a bond. Furthermore, other parties, such as Da-Col, who later contract with such subcontractor believe that they have an adequate remedy, if it proves necessary, against the bond of the apparent original contractor. When the sham relationship is discovered, however, the sham contractor could invoke Article 5452-1 to deny its liability on its bond by saying that another original contractor has been created by the statute, and any remedy is now against the new original contractor. This would allow the owner and sham to conceal their sham relationship until claim was made on the sham contractor's bond, at which time they could reveal their sham arrangement and invoke Article 5452-1 to their own advantage, denying liability on the bond. This cannot be the intent of the Legislature, which adopted the sham contractor statute to protect subcontractors and materialmen, not to encourage sham relationships.

*Felker* and *Barlite* are clearly distinguishable since, in those cases, the second original contractor became such by directly contracting with the owner. In that circumstance, the second original contractor should be aware of his status. There is no deception which may later operate to his detriment and the detriment of those contracting with him.

In view of our holdings above, it is unnecessary for us to pass upon the question of whether notice received by Caston and Butler, but not addressed to them in their capacity as officers and directors of Pala, Inc., is notice to Pala, Inc. The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.