**Martin B. SHAW, Appellant,**

v.

**McPHAIL ELECTRIC COMPANY, INC., Appellee.**

**No. 19028.**

Court of Civil Appeals of Texas, Dallas.

Nov. 18, 1976.

Rehearing Denied Dec. 16, 1976.

Allan D. Hilton, Hunter & Vineyard, Dallas, for appellant.

Roger L. Turner, Dallas, for appellee.

GUITTARD, Justice.

McPhail Electric Company recovered a judgment against Martin B. Shaw, the owner of a residence, enforcing a mechanic's and materialman's lien in the amount of $548.30. Shaw appeals, contending that McPhail Electric Company does not qualify either as an original contractor or as a subcontractor under the Hardeman Act, Tex.Rev.Civ.Stat.Ann. arts. 5452, 5453 (Vernon Supp.1976), and has not complied with the notice requirements of that Act. Appellee contends that it should be treated as an original contractor under the sham contractor statute, Tex.Rev.Civ.Stat.Ann. art. 5452–1 (Vernon Supp.1976) and that the lien was properly secured by filing the lien affidavit with the county clerk and mailing two copies to the appellant in the time and manner required of original contractors by article 5453(1). We agree. Accordingly, we affirm the judgment.

Appellee McPhail Electric Company installed electrical fixtures and performed other services pursuant to an oral agreement between Lelan McPhail, president of McPhail Electric and Ralph Salyers, on behalf of Salyers & Walley, Inc. The fixtures and other apparatus were installed in a house being built by Salyers & Walley on land owned by Ralph Salyers and Ben Caballero. Salyers himself took McPhail to the building site and showed him the work to be done by McPhail Electric.

Appellee's employees installed the specified electrical apparatus on February 25 and 26 and March 4 and 18 of 1974. Meanwhile, on March 6, Salyers and Caballero conveyed the tract on which the work was being done to appellant Shaw. Appellee sent bills for its work to Salyers & Walley and received one check from Salyers & Walley in part payment. On failure to receive further payment, appellee filed a mechanic's and materialman's lien affidavit with the county clerk on April 24, 1974, and sent copies by certified mail to Salyers & Walley and to appellant.

Appellee sued Salyers & Walley on the debt and sued appellant for enforcement of the lien. Salyers & Walley failed to an-

swer, and a default judgment was entered against it for the amount claimed. After trial without a jury, judgment was entered against appellant, giving him the option of paying appellee the sum of $548.30, which the court found to be the value of the electrical apparatus installed, or allowing appellee to enter upon the property and remove the fixtures subject to the lien. Shaw alone appeals from this judgment.

Appellant's points of error present four contentions: (1) that appellee failed to qualify for a statutory lien as a subcontractor because there is no evidence establishing a contractual relationship between Salyers & Walley, Inc., and any owner of the property or any original contractor; (2) that the appellee failed to qualify for a constitutional or statutory lien as an original contractor because there is no evidence to establish a contract between appellee and the owner; (3) that appellee does not have an enforceable lien because it failed to give notice to the persons who owned the property at the time the work was done; and (4) that the trial court's finding that all the materials listed on appellee's invoice were specially fabricated, was against the overwhelming weight and preponderance of the evidence.

We do not consider the first and fourth contentions because they are immaterial to the judgment and to this appeal. The first is immaterial because appellee did not plead that it had the status of a subcontractor with regard to this construction job and on this appeal it expressly disclaims any subcontractor's lien. The fourth contention has no significance on this appeal because the judgment is not based on the trial court's finding that the materials were specially fabricated. Special fabrication of materials is significant only where such materials have not been delivered or incorporated into the construction, article 5452(1). Such materials, less their salvage value, may be included in the lien claim because they may have limited usability elsewhere. In this case, all of the materials for which a lien is claimed were installed at the construction site.

Pertinent to this appeal, however, is appellant's second contention, that there is no evidence in the record establishing appellee's status as an original contractor. The trial court held that appellee was entitled to the status of an original contractor under the sham contractor statute, article 5452–1(1), which provides in part:

Whenever any owner of real property shall enter into any contract with a corporation for the construction or repair of any house, building or improvements thereon, and said owner can effectively control the corporation with whom such contract is made, through the ownership of voting stock therein, interlocking directorships or otherwise . . . any person, firm or corporation who, under a direct contractual relationship with said person or corporation and who may labor, specially fabricate material, or furnish labor or material to be used in the prosecution of the work under such contract shall be deemed to be in a direct contractual relationship with the owner and may perfect his lien against the property in the same manner as any other original contractor.

Although the judge made no specific findings of fact concerning the contractual relationship between Salyers & Walley, Inc., and the owners, Salyers and Caballero, or concerning whether said owners could effectively control Salyers & Walley, Inc., the evidence introduced at trial is sufficient to bring the case within the sham contractor statute. The evidence, though brief, is undisputed. Lelan McPhail was contacted by Ralph Salyers early in 1974 concerning completion of the electrical work at the subject housing project. Salyers asked McPhail to come out to the project. When McPhail arrived, Salyers showed him around and pointed out the work to be done. At this time and also at the time the work began, Salyers was one of the owners of the tract where the project was located. All bills for materials and services rendered by appellee were addressed and mailed to Salyers & Walley, Inc., and appellee received one check from Salyers & Walley in partial payment. This evidence supports an

**500**

inference that Salyers & Walley, Inc. had some sort of contract with the owners. Since it is undisputed that Ralph Salyers was one of the owners of the land and was also the person who acted for the corporation in contracting with McPhail for the electrical work, and since "Salyers" is one of the names used in the corporate name, we hold that the evidence supports the further inference that the owners of the land had "control" of the corporation within the meaning of the sham contractor statute. Thus the trial court was authorized to treat appellee as a contractor in a direct contractual relationship with the owner and as entitled to perfect his lien against the property in the same manner as any other original contractor, that is, by taking the steps prescribed by article 5453(1), without complying with the additional requirements applicable to subcontractors in article 5453(2). *Da-Col Paint Manufacturing Co. v. American Indemnity Co.*, 517 S.W.2d 270, 272–73 (Tex.1974).

■ Appellant's third contention is that appellee failed to comply with the notice requirements of article 5453(1) because it failed to mail the notice to Salyers and Caballero, who owned the property at the time the materials were first delivered, rather than to appellant Shaw, who had bought the property in the meantime. We do not agree that the notice must be sent to a former owner rather than the current owner. The statute requires only that notice be sent "to the owner." It is reasonable to interpret this language as requiring notice to the owner at the time the notice is sent because his property is being subjected to the lien. Accordingly, we hold that appellee perfected its lien against appellant's property by timely filing of its affidavit with the county clerk and sending copies to the owner, appellant, by certified mail.

Appellant cites *Inman v. Clark*, 485 S.W.2d 372 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ) in support of his contention that the notice must be sent to the former owner. In that case, contractors who had dealt with the former owner filed their affidavit after the property had been sold and mailed a copy to the former owner. They brought their suit against the new owners, who defended on the ground that article 5453 required notice to them. The court of civil appeals held that the new owners had constructive notice of the lien because after they had bought the property they were present when the contractors were working and should have inquired as to whether they had been paid. We do not read this case as holding, even by implication, that a notice to the new owners would not have complied with the statute.

All of appellant's points are overruled for the reasons stated.

Affirmed.