COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TRINITY DRYWALL SYSTEMS, LLC., | § | No. 08-12-00041-CV |
| Appellant, | § | Appeal from the |
| v. | § | 67th District Court |
| TOKA GENERAL CONTRACTORS, LTD., AND VINEYARD VILLAGE, MSV, LLC, | § § § | of Tarrant County, Texas |
| Appellees. | § | (TC#67-240386-09) |

**O P I N I O N**

Appellant Trinity Drywall Systems, LLC, ("Trinity") appeals a final judgment in favor of

TOKA General Contractors, LTD ("TOKA") and Vineyard Village, MSV, LLC, ("Vineyard").[1]

For the reasons that follow, we reverse, render, and remand.

**BACKGROUND**

Vineyard owns the Shops at Vineyard Village Shopping Center in Euless, Tarrant

County, Texas. On December 3, 2006, Vineyard signed a contract with TOKA for the

---

[1] TOKA initially filed a notice of appeal, but after it moved to dismiss its cross-appeal, this Court granted the motion to dismiss on May 16, 2012. *See Trinity Drywall Systems, LLC v. Toka General Contractors, LTD.*, No. 08-12-00041-CV, 2012 WL 1745583, at \*1 (Tex.App. – El Paso May 16, 2012, no pet.) (memo op.). On appeal, Trinity does not challenge the trial court's final judgment as it applies to TOKA. Thus, Vineyard is the only Appellee now before us.

construction of a project known as "Vineyard Village." Under the contract, TOKA agreed to act as the general contractor for the construction project.

On or about April 18, 2007, TOKA hired Trinity as a subcontractor to provide labor and materials for lath, plaster, and simulated stone finishing for the construction project. After Trinity completed its work on the project, TOKA observed cracking in the stucco plaster that Trinity had applied to the exterior of the shopping center. Trinity and TOKA agreed that Trinity would repair the cracks in the stucco. Thereafter, Trinity sent an invoice for $60,795 to TOKA for the repair work and TOKA refused to pay.

On August 17, 2009, Trinity filed a mechanic's lien and materialman's lien affidavit to place a lien upon the property on which the work was performed. Trinity then sued TOKA and Vineyard asserting claims for breach of contract, unjust enrichment, and *quantum meruit*. Trinity also sought to foreclose its mechanic's lien. TOKA and Vineyard answered with a general denial and Vineyard counterclaimed seeking a declaratory judgment that the mechanic's lien on its property was invalid, and attorney's fees.

Trinity moved for summary judgment on its breach of contract and *quantum meruit* claims against TOKA, the validity of its mechanic's lien, and Vineyard's declaratory judgment. After considering Trinity's motion, TOKA and Vineyard's responses, and Trinity's reply, the trial court denied Trinity's motion for summary judgment.

Vineyard and TOKA filed a trial brief on constitutional mechanic's liens and requested that the trial court rule as a matter of law that Trinity's foreclosure claim could not be maintained on the basis asserted by Trinity. Before the jury was empanelled, the trial court ruled as a matter of law that Vineyard should recover on its counterclaim for a declaratory judgment and declared that

2

Trinity's mechanic's lien was invalid and unenforceable. After the court made its pretrial ruling, the remaining claims in the case were tried to a jury. The jury found in favor of Trinity on its breach of contract claim against TOKA.

The trial court entered a final judgment on December 15, 2011. In pertinent part, the judgment decreed that Trinity's mechanic's lien against Vineyard's real property was invalid and unenforceable and awarded Vineyard $43,585.50 as attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code and Section 53.156 of the Texas Property Code. In addition, the trial court with conditioning the award on Vineyard's success, awarded Vineyard: (1) $30,000 upon the filing of an appeal to the court of appeals; (2) $15,000 upon the filing a petition for review by either party to the supreme court; and (3) and additional $25,000 if briefing on the merits is requested. The trial court made findings of fact and conclusions of law in support of its judgment. This appeal followed.[2]

## DISCUSSION

In four issues on appeal, Trinity contends that: (1) a subcontractor is entitled to enforce a constitutional lien without having to perfect any statutory requirements if the subcontractor meets the requirements of the "sham contracts" provision under Section 53.026 of the Texas Property Code; (2) the trial court erroneously found that Trinity "admitted" it was a subcontractor; (3) the trial court erred by denying Trinity's mechanic's lien and by granting Vineyard's declaratory judgment and request for attorney's fees; and (4) Trinity is entitled to judgment as a matter of law because it satisfied the requirements of the sham contract provision.

*Standards of Review*

---

[2] On appeal, Trinity assigns error on those portions of the final judgment that declare its mechanic's lien invalid and unenforceable and that award attorney's fees to Vineyard.

*A. Declaratory Judgment*

The purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008); *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). The statute is "remedial" and "to be liberally construed . . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b). A declaratory judgment requires a justiciable controversy as to the rights or status of the parties, and the declaration must actually resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). A trial court may exercise its discretion in entering a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) (citing *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 704 (Tex.App. – Houston [1st Dist.] 1987, writ denied)).

Declaratory judgments are reviewed under the same standards as other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *see In re Estate of Tyner*, 292 S.W.3d 179, 182 (Tex.App. – Tyler 2009, no pet.). We look to the procedure used to resolve the issue below to determine the standard of review on appeal. *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex.App. – Austin 2007, pet. denied). When a declaratory judgment is entered after a bench trial, we review the trial court's factual findings and conclusions of law *de novo. See McCulloch v. Brewster County*, 391 S.W.3d 612, 615 (Tex.App. – El Paso 2012, no pet.); *Van Dam v. Lewis*, 307 S.W.3d 336, 339 (Tex.App. – San Antonio 2009, no pet.). The trial court's determination in a declaratory judgment action must be upheld if it can be sustained upon any legal theory supported by the evidence. *See Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145,

149 (Tex.App. – Austin 2003, no pet.); *Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 864 (Tex.App. – Houston [1st Dist.] 1999, no pet.); *Oak Hills Props. v. Saga Rests., Inc.*, 940 S.W.2d 243, 245 (Tex.App. – San Antonio 1997, no writ).

### B. *Legal and Factual Sufficiency*

In an appeal from a bench trial, a trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings of fact may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In conducting a legal sufficiency review, we consider evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827.

However, in a factual sufficiency review, we consider and weigh all of the evidence and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our reviews, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within his exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819; *Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex.App. – Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We review the trial court's conclusions of law *de novo*. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A trial court's conclusions of law will be upheld on

5

appeal if the judgment can be sustained on any legal theory supported by the evidence. *In re Moers*, 104 S.W.3d 609, 611 (Tex.App. – Houston [1st Dist.] 2003, no pet.). Although the trial court's conclusions of law are not subject to a factual sufficiency challenge, an appellate court may review the legal conclusions drawn from the facts to determine their correctness. *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 234 (Tex.App. – Dallas 2004, pet. denied).

*Analysis*

**MECHANIC'S LIENS AND THE "SHAM CONTRACTS" PROVISION**

In Issue One, Trinity asserts that it is entitled to enforce a constitutional lien without having to satisfy the perfection requirements of Chapter 53 of the Texas Property Code because it qualifies as an original contractor under the Section 53.026 or the "sham contracts" provision of the Property Code.

The source of all mechanic's liens in Texas is Article 16, section 37 of the Texas Constitution. *See Cavazos v. Munoz*, 305 B.R. 661, 679-80 (S.D. Tex. 2004) (discussing the nature and history of Texas' constitutional and statutory liens). The Texas Constitution provides:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

TEX. CONST. art. XVI, § 37. The lien authorized by this constitutional provision is self-executing, and exists independently and apart from any legislative act. *Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054 (1896); *Clifton v. Jones*, 634 S.W.2d 883, 886 (Tex.App. – El Paso 1982, no writ).

In accordance with the constitutional mandate found in Article 16, section 37 of the Texas Constitution, the Legislature enacted Chapter 53 of the Texas Property Code, which is entitled "Mechanic's, Contractor's, or Materialman's Lien" to govern the assertion and enforcement of

6

mechanic's liens.  *See* TEX. CONST. art. XVI, § 37; TEX. PROP. CODE ANN. §§ 53.001-53.287. (West 2007); *see also CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 246-47 (Tex. 2002) (stating that the constitutional lien is not self-enforcing and that the constitution mandates that the Legislature set forth a scheme for the enforcement of mechanic's liens).  Chapter 53 also creates a statutory lien for a person who is contracted to labor, specially fabricate material, or furnish labor or material for the construction or repair of a house, building, or improvement, regardless of whether the person has a direct contractual relationship with the property owner.  *See* TEX. PROP. CODE ANN. § 53.021 (West 2007); *CVN Group*, 95 S.W.3d at 247.

Accordingly, Texas law recognizes two types of mechanic's liens: (1) a constitutional lien; and (2) a statutory lien.  TEX. CONST. art. XVI, § 37; TEX. PROP. CODE ANN. § 53.001 (West 2007); *Advance'd Temps., Inc. v. Reliance Sur. Co.*, 165 S.W.3d 1 (Tex.App. – Corpus Christi 2004, pet. granted); *Cavazos*, 305 B.R. at 668 (citing *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex.App. – Texarkana 1999, no writ) ("[a] statutory lien exists through compliance with the applicable statutes, while a constitutional lien arises by virtue of the Constitution without the aid of the statutes.")).  The constitutional lien is only available to those who contract directly with the property owner or its agent.  *Da-Col Paint Mfg. Co. v. American Indem. Co.*, 517 S.W.2d 270, 273 (Tex. 1974); *Gibson v. Bostick Roofing and Sheet Metal Co.*, 148 S.W.3d 482, 493 (Tex.App. – El Paso 2004, no pet.).  This requirement addressed the concern that the owner of the property on which the lien is claimed will have notice of the lien.  *Atkinson v. Jackson Bros.*, 259 S.W. 280, 286 (Tex.Civ.App. – Austin 1923, writ granted), *modified on other grounds*, 270 S.W. 848 (Tex. Comm'n App. 1925).  The statutory lien differs from the constitutional lien in that the statutory lien protects both subcontractors and original contractors.  *See CVN Group*, 95 S.W.3d at 247.

7

However, when an original contractor fails to meet the requirements for a statutory lien, the constitutional lien is still available to him. *See Terraces at Cedar Hill, L.L.C. v. Gartex Masonry and Supply Inc.*, No. 05-10-00226-CV, 2011 WL 1050852, at * 2 (Tex.App. – Dallas Mar. 24, 2011, pet. denied) (mem. op.). Thus, "[w]hether one is considered an original contractor or a subcontractor is of fundamental importance. A subcontractor does not have a constitutional lien, and faces a more onerous burden in perfecting a statutory lien." *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273 (citations omitted).

It is well-settled that a constitutional lien requires a person to be in privity of contract with the property owner and, therefore, that lien does not apply to derivative claimants such as subcontractors. *See Gibson*, 148 S.W.3d at 493. In *Gibson*, this Court had to determine whether a subcontractor held a valid constitutional lien, and due to the constitution's lack of the definitions for the terms "contractor" and "subcontractor," we looked to the definitions provided in Chapter 53 of the Property Code. *Id*. An "original contractor" is a person contracting with an owner directly or through the owner's agent. TEX. PROP. CODE ANN. § 53.001(7) (West 2007). A "subcontractor" is a person who has furnished labor or materials to fulfill an obligation to an original contractor or to a subcontractor to perform all or part of the work required by an original contract. *Id*. § 53.001(13).

Trinity does not dispute that it failed to comply with the applicable statutory perfection requirements for a statutory lien and thus, the statutory lien is not at issue. Instead, Trinity contends that it is entitled to enforce a constitutional lien because it is an "original contractor" pursuant to Section 53.026. *See* TEX. PROP. CODE ANN. § 53.026 (West 2007). Specifically, Trinity challenges the trial court's Conclusion of Law Three, in which the trial court held that

8

Trinity's request to be treated as an original contractor under Section 53.026 was unfounded because the provisions of Chapter 53 of the Property Code cannot be used to alter or modify the rights created under Article 16, section 37 of the Texas Constitution. Whether Section 53.026 applies to the constitutional lien authorized by TEX. CONST. art. XVI, § 37 appears to be a matter of first impression.

Section 53.026 of the Texas Property Code entitled "Sham Contract" provides:

(a) A person who labors, specially fabricates materials, or furnishes labor or materials under a direct contractual relationship with another person is considered to be in direct contractual relationship with the owner and has a lien as an original contractor, if:

(1) the owner contracted with the other person for the construction or repair of a house, building, or improvements and the owner can effectively control that person through ownership of voting stock, interlocking directorships, or otherwise;

(2) the owner contracted with the other person for the construction or repair of a house, building, or improvements and that other person can effectively control the owner through ownership of voting stock, interlocking directorships, or otherwise; or

(3) the owner contracted with the other person for the construction or repair of a house, building, or improvements and the contract was made without good faith intention of the parties that the other person was to perform the contract.

TEX. PROP. CODE ANN. § 53.026(a) (West 2007). Although relatively few courts have interpreted Section 53.026, case law establishes that the "sham contracts" provision was designed to elevate a subcontractor or materialman to an original contractor where the original contractor acquired such status by virtue of a sham relationship with the owner. *See Da-Col Paint Mfg. Co. v. American Indem. Co.*, 517 S.W.2d 270, 273 (Tex. 1974) (construing predecessor statute to Section 53.026); *see also First Nat'l Bank*, 517 S.W.2d at 265 (same); *In re Waterpoint Int'l, LLC*, 330 F.3d 339, 348 (5th Cir. 2003) (noting that the sham contracts provision protects subcontractors and materialmen from situations where the original contractors are no more than an "alter ego" of

the owners). Therefore, the effect of Section 53.026 is to change and improve a subcontractor or materialman's position in the construction contract chain.

On appeal, Trinity asserts that the Texas Constitution creates the mechanic's and materialmen's liens and that Chapter 53 of the Texas Property Code tell us how those liens are to be enforced. Trinity argues that when a subcontractor is elevated to the status of an original contractor under the sham contracts provision of Chapter 53, the subcontractor is entitled to enforce a constitutional lien without having to satisfy any statutory requirements because the statutory provisions set forth which mechanics and materialmen may rely on the constitutional lien.

Vineyard responds that Texas case law is clear that the sham contract provision was never meant to be applied to a constitutional lien. In support of this argument, Vineyard cites to *Southwest Properties, L.P. v. Lite-Dec of Tex., Inc.*, 989 S.W.2d 69 (Tex.App. – San Antonio 1998, pet. denied). In *Southwest Properties*, the San Antonio Court of Appeals concluded that Section 53.026 does not provide a method of allocating liability to a property owner, but rather, the provision applies for the sole purpose of filing and perfecting mechanic's liens. *See Southwest Properties*, 989 S.W.2d at 69, 72. In reaching its decision, the *Southwest Properties* court looked to Texas case law which had observed that prior to 1965 it was common for owners to prevent persons they transacted with from obtaining the advantageous position of original contractor by assuming that position themselves by means of a sham contract. *Id*. at 71 (quoting *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273). In response to such practices, the Legislature enacted the statutory provision giving a subcontractor his true status of original contractor. *Id*. The *Southwest Properties* court explained that by using the phrases "original contractor" and "direct contractual

10

relationship with the owner" in Section 53.026, "the Legislature ensured that claimants would not have liens voided over a failure to meet specific notice requirements, which are tied to whether that person is an original contractor. Applying this statute as only controlling lien requirements gives a subcontractor certain benefits that normally only an original contractor would receive." *Id*. at 72.

Therefore, based on *Southwest Properties*, Vineyard maintains that Section 53.026 was clearly never meant to be utilized outside of the statutory lien context because statutory liens are the only liens that have timetables. Vineyard also relies on *Shaw v. McPhail Elec. Co., Inc.*, 544 S.W.2d 497 (Tex. Civ. App. – Dallas 1976, writ refused n.r.e.) (involving the statutory predecessor to Section 53.026) in making this point. In *Shaw*, the owner of a residence appealed from a judgment granting an electrician's enforcement of a mechanic's and materialmen's lien. *Shaw*, 544 S.W.2d at 498. On appeal, the residence owner argued in pertinent part that: (1) the electrician did not qualify for a statutory lien as subcontractor; and (2) the electrician did not qualify for a constitutional or statutory lien because there was no evidence establishing privity of contract between the parties. *Id*. at 499.

The Dallas Court of Appeals concluded that the owner's contention that the electrician failed to qualify for a statutory lien as a subcontractor was immaterial where the electrician did not plead subcontractor status and disclaimed any subcontractor's lien on appeal. *Id*. As to the owner's second contention, the *Shaw* court held that the evidence was sufficient to bring the case under the sham contracts provision and that the trial court was permitted to treat the electrician as a contractor in a direct contractual relationship with the owner and was entitled to perfect his lien against the property in the same manner as any other original contractor, by taking the steps

11

prescribed by the statute, and without having to comply with the additional requirements prescribed for subcontractors. *Id*. at 499-500.

We are not persuaded by Vineyard's reliance on *Southwest Properties* and *Shaw* to argue that the sham contracts provision only moves a subcontractor to original contractor status within the statutory scheme for a statutory lien and does not provide for the status as an original contractor for purposes of asserting and enforcing a constitutional lien. First, we find *Southwest Properties* inapplicable because the issue in that case was not whether Section 53.026 applied to a constitutional lien, but rather, whether the sham contracts provision creates contractual alter ego liability for the property owner independent from a lien claim. *Southwest Properties*, 989 S.W.2d at 69, 72. Second, *Shaw* did not hold that the shams contract provision only applies to statutory liens, instead, the trial court found that the subcontractor in that case was elevated to the status of an original contractor and, that, in such a case, the notices required of subcontractors or materialmen were not necessary.[3] *Shaw*, 544 S.W.2d at 498.

Moreover, the mechanic's and materialmen's lien statutes of Texas are to be liberally construed for the purpose of protecting laborers, materialmen, and owners. *Cabintree, Inc. v. Schneider*, 728 S.W.2d 395, 396 (Tex.App. – Houston [1st Dist.] 1986, writ ref'd). The argument raised by Vineyard is contrary to this rule. The Legislature codified Chapter 53 for the speedy and efficient enforcement of mechanic's liens as mandated by Article 16, section 37 of the Texas Constitution. TEX. CONST. art. XVI, § 37; *CVN Group*, 95 S.W.3d at 246-47. While the Legislature has no power to affix conditions of forfeiture of lien created by the constitutional

---

[3] We also note that the *Southwest Properties* court specifically overruled the owner's contention that the electrician did not qualify for a constitutional or statutory lien because there was no evidence establishing privity of contract between the parties. *Shaw*, 544 S.W.2d at 499, 500.

provision, it may provide means for enforcement of such lien and, in doing so, prescribe necessary things for the protection of owners or purchasers of such property. *Newman v. Coker*, 310 S.W.2d 354, 362 (Tex.Civ.App. – Amarillo 1958, no writ). Although Vineyard asserts that Trinity is attempting to use the statutory scheme to alter a constitutional right, we note that Article 16, section 37 itself does not limit liens to "original contractors" rather, it states "[m]echanics, artisans and material men, of *every class*, shall have a lien . . . ." and then directs the Legislature to provide for the enforcement of such liens. TEX. CONST. art. XVI, § 37 [emphasis added].

Section 53.026 specifically provides that where a sham contract exists, the legal fiction is to be ignored and the subcontractor is deemed to be an original contractor. TEX. PROP. CODE ANN. § 53.026 (West 2007). This is consistent with the practice the Legislature sought to eliminate by enacting Section 53.026's statutory predecessor. *See Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273 (stating that it was common practice for owners to enter into sham contracts to ensure that the persons they contracted with would be subcontractors, and therefore, those subcontractors could not enjoy the advantages of being an original contractor).[4] Accordingly, under the sham contracts provision, a subcontractor is placed in direct privity with the property owner for purposes of the mechanic's and materialman's lien statutes. *See Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273; *Shaw*, 544 S.W.2d at 500; *In re Waterpoint*, 330 F.3d at 348. As a result, by changing a subcontractor's position in the construction contract chain, the statutory provisions allow a subcontractor hired under a sham contract to assert and enforce a constitutional lien because he is deemed to have a direct contractual relationship with the owner. *See* TEX. PROP.

---

[4] The *Da-Col* court stated that the sham contracts provision is not a notice statute and further explained that, "[f]undamental to the operation of the statute, however, is the recognition that the owner and sham contractor are one and the same." *See Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273.

13

CODE ANN. § 53.001(7) (West 2007); *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273; *First Nat'l Bank*, 517 S.W.2d at 265.

Accordingly, if Trinity was, in fact, an original contractor, pursuant to Section 53.026 he is entitled to assert and enforce a constitutional lien. *See* TEX. PROP. CODE ANN. § 53.001(7) (West 2007); *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273; *First Nat'l Bank*, 517 S.W.2d at 265. Because Section 53.026 elevates a subcontractor to an original contractor such that he is deemed to have a direct contractual relationship with the owner, the trial court erred in concluding that Trinity's claim that it be treated as an original contractor under Section 53.026 was unfounded because the provisions of Chapter 53 of the Property Code cannot be used to alter or modify the rights provided by Article 16, section 37 of the Texas Constitutional lien. *See* TEX. PROP. CODE ANN. § 53.001(7) (West 2007); *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273; *First Nat'l Bank*, 517 S.W.2d at 265. Issue One is sustained.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Trinity asserts that the evidence is legally and factually insufficient to support the trial court's Finding of Fact Two. In its Finding of Fact Two the trial court stated that: "[i]n [its] Petition, [Trinity] admitted that it performed work on a project for the improvement of real property owned by [Vineyard] as a subcontractor under a contract with [TOKA] that served as the general contractor on the project."

As previously noted the Property Code defines a "subcontractor" as a person who has furnished labor or materials to fulfill an obligation to an original contractor[5] or to a subcontractor to perform all or part of the work required by an original contract. TEX. PROP. CODE ANN. §

---

[5] An "original contractor" is a person contracting with an owner directly or through the owner's agent. TEX. PROP. CODE ANN. § 53.001(7) (West 2007).

53.001(13) (West 2007). The record establishes that, in both Trinity's original petition and its amended petition, Trinity alleged that TOKA is a general contractor that contracted with Trinity to provide labor and materials for a shopping center owned by Vineyard. In its Finding of Fact Two, the trial court found that Trinity "admitted" that it performed work for the improvement of real property owned by Vineyard as a subcontractor under a contract with TOKA who served as the general contractor on the project.

Trinity argues that to the extent that the trial court's finding and conclusion attempt to establish a judicial admission, they are without support in the record or the law. Trinity maintains that it never characterized itself as a subcontractor in asserting its constitutional mechanic's lien, but rather, clearly and unequivocally alleged in its petition that it is an "original contractor" pursuant to the sham contracts provision. We agree.

A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex.App. – Fort Worth 2001, no pet.). In a party's live pleadings, assertions of fact that are not pleaded in the alternative are regarded as formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). A judicial admission must be deliberate, clear, and unequivocal. *Bowen v. Robinson*, 227 S.W.3d 86, 94 (Tex.App. – Houston [1st Dist.] 2006, pet. denied).

The record reflects that in addition to explaining that TOKA had contracted Trinity to work on a property owned by Vineyard, both Trinity's original petition and its amended petition, Trinity: (1) alleged that Vineyard effectively controlled TOKA;[6] (2) sought to foreclose it mechanic's lien pursuant to Article 16, section 37 of the Texas Constitution and Section 53.026 of the Property Code; and (3) asserted that it was an "original contractor for the improvements for

---

[6] In making this factual allegation, Trinity referenced Section 53.026 of the Texas Property Code.

which a lien is claimed." Additionally, the "Affidavit for Mechanic's Lien and Materialman's Lien," filed by Trinity stated that: (1) Trinity claimed a lien "on the property and improvements" identified in the affidavit under Article 16, section 37 of the Texas Constitution and Section 53.026 of the Property Code; and (2) Vineyard was the owner of the real property, and that Vineyard operated through and entered in a contract with TOKA, an entity that Vineyard could effectively control.

In its live petition, Trinity described the circumstances under which it was contracted by TOKA, an entity that Vineyard could allegedly control, Trinity asserted it was an original contractor for purposes of claiming a lien, and claimed a lien under Article 16, section 37 of the Texas Constitution and Section 53.026 of the Property Code. Although Trinity alleged it was contracted by TOKA, Vineyard's general contractor, Trinity asserted in the alternative that it was an original contractor. Pleading in the alternative does not constitute a judicial admission. *See Robinson*, 227 S.W.3d at 94-95.

While we note that Trinity refers to itself as a "subcontractor" in its motion for summary judgment and in its appellate brief, Trinity's position has clearly and consistently been that it should be treated as an original contractor under the shams contract provision and, that, as an original contractor, it is entitled to assert and enforce a lien pursuant to Article 16, section 37 of the Texas Constitution. Based on the foregoing, we conclude that the trial court's finding that Trinity admitted it was a subcontractor contradicts Trinity's pleadings. Accordingly, the trial court's Finding of Fact Two is not supported by legally sufficient evidence. *See City of Keller*, 168 S.W.3d at 810.

16

In a sub-issue, Trinity challenges the trial court's Conclusion of Law Two which provided that: "[Trinity] admitted that it was a subcontractor on the project to improve [Vineyard's] real property. Accordingly, [Trinity] is not entitled to claim a lien under Article 16, section 37 of the Texas Constitution as a subcontractor." Trinity argues that the trial court's conclusion is without support because there is no factual basis upon which the trial court could have concluded that Trinity admitted it was a subcontractor. Trinity also argues that it unclear whether the trial court's conclusion represents an attempt to use the alleged admission to defeat Trinity's assertion that it qualifies as an original contractor under Section 53.026 or whether the conclusion means only that Trinity contracted with TOKA rather than Vineyard. To the extent that the trial court's finding and conclusion signifies the latter, Trinity contends the trial court's finding and conclusion are immaterial as to whether Trinity is entitled to enforce a constitutional lien.

A subcontractor does not have a constitutional lien. *See Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273; *Gibson*, 148 S.W.3d at 493; *see also In re Waterpoint*, 330 F.3d at 343-44. However, having already determined that the trial court erred in finding that Trinity admitted that it was a subcontractor, we conclude the trial court erred by concluding that Trinity is not entitled to claim a lien under Article 16, section 37 of the Texas Constitution as a subcontractor because Trinity has consistently asserted that it was an original contractor under the sham contract provision for purposes of asserting a constitutional lien. *See BMC Software*, 83 S.W.3d at 794 (we review the trial court's legal conclusions drawn from the facts to determine their correctness). Issue Two is sustained.

## DECLARATORY JUDGMENT

17

In Issue Three, Trinity argues that the trial court erred in denying Trinity's lien foreclosure claim and granting Vineyard Village's declaratory judgment claim and request for attorney's fees.

Vineyard requested a declaration that Trinity's constitutional lien was invalid and unenforceable because Trinity's assertion and enforcement of a constitutional lien was based on an impermissible application of Section 53.026. Trinity argues that the trial court erred in holding that Texas law does not allow Trinity, as an admitted subcontractor to claim a lien under Article 16, section 37 of the Texas Constitution and that the lien claim by Trinity in its lien affidavit was invalid and improper as a matter of law. In effect, Trinity is challenging the trial court's Conclusion of Law Four which also stated that: "[Trinity's] claim to foreclose [its mechanic's lien] should be DISMISSED WITH PREJUDICE as a matter of law based on the legal conclusions and admissions by [Trinity] recited herein." (Emphasis in original).

If reversal is warranted, we can render the judgment the trial court should have rendered, unless a remand for further proceedings is necessary. *FDIC v. Projects Am. Corp.*, 828 S.W.2d 771, 772 (Tex.App. – Texarkana 1992, writ denied). However, we may only render judgment in cases where the material facts are undisputed. *Rosen*, 114 S.W.3d at 149. Because we have already determined that Section 53.026 allows a subcontractor hired under a sham contract to assert and enforce a constitutional lien because under the statutory provision a subcontractor is deemed to have a direct contractual relationship with the owner and have also concluded that the trial court erred in finding that Trinity admitted that it was a subcontractor, we conclude the trial court erred in rendering declaratory judgment for Vineyard. Accordingly, because there are no facts left to be determined, we render judgment denying Vineyard's request for a declaratory judgment. *Rosen*, 114 S.W.3d at 149.

18

**Attorney's Fees**

Next, Trinity asserts the trial court erred in awarding attorney's fees to Vineyard. The trial court awarded Vineyard attorney's fees under Section 37.009 of the Texas Civil Practice and Remedies Code and Section 53.156 of the Texas Property Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (providing that, in any proceeding under the Declaratory Judgments Act, the trial court may award reasonable and necessary attorney's fees that are equitable and just); TEX. PROP. CODE ANN. § 53.156 (West 2007) (providing that in any proceeding to foreclose a lien or in any proceeding to declare that any lien is invalid or unenforceable, the trial court may award costs and reasonable attorney's fees as are equitable and just). Trinity contends that we should reverse and remand the trial court's award of attorney's fees to Vineyard because reversal of the trial court's judgment declaring Trinity's lien invalid and unenforceable, "strikes at the heart" of the trial court's determination that an award of attorney's fees was equitable and just under either statute.

The record shows that the trial court awarded attorney's fees to Vineyard because it was forced to incur them in prosecuting its declaratory judgment counterclaim, its attorney's fees were reasonable and necessary, and an attorney's fees award would be equitable and just under the circumstances and applicable statute. An award of attorney's fees in a declaratory judgment action is within the trial court's discretion and is not limited to the prevailing party. *See Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex.App. – Houston [14th Dist.] 2011, pet. denied); *see also Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 771 (Tex.App. – Dallas 1990, writ denied). In *Bocquet v. Herring*, the Supreme Court explained that "the Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the

19

requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." 972 S.W.2d 19, 21 (Tex. 1998). However, unreasonable fees cannot be awarded even if the court believes them just, but the trial court may conclude that it is not equitable or just to award reasonable and necessary fees. *See id.* When a declaratory judgment is reversed on appeal an award of attorney's fees may no longer be equitable and just. *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 768 (Tex.App. – El Paso 2010, no pet.). Although the award of attorney's fees rests in the sound discretion of the trial court, the trial court's exercise of that discretion should be based on the facts and circumstances of each case.

In light of our disposition of the case on appeal, we reverse the award of attorney's fees and remand the issue of attorney's fees so the trial court may reconsider the award of attorney's fees. *See Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 405 (Tex. 2009) (stating that the trial court should have the opportunity to reconsider its award of attorney's fees where claimant is no longer the prevailing party); *Boerschig*, 322 S.W.3d at 768-69; *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex.App. – Dallas 2004, pet. denied); *Fitzgerald v. Antoine Nat'l Bank*, 980 S.W.2d 228, 232 (Tex.App. – Houston [14th Dist.] 1998, no pet.). Issue Three is sustained.

### JUDGMENT AS A MATTER OF LAW

In Issue Four, Trinity contends that it established as a matter of law that it is an original contractor pursuant to Section 53.026 and, as such, is entitled to judgment as a matter of law that it has a valid and enforceable constitutional lien.

Under Section 53.026 a person customarily considered a subcontractor may be deemed to be an original contractor if it can be shown that: (1) the owner can effectively control the original

20

contractor through ownership of voting stock, interlocking directorships, or otherwise; or (2) the original contractor can effectively control the owner through ownership of voting stock, interlocking directorships, or otherwise; or (3) the contract was made without good faith intention that the original contractor perform the contract. TEX. PROP. CODE ANN. § 53.026 (West 2007). Under this statutory provision there is no requirement that the owner does in fact control the original contractor or that the original contractor does in fact control the owner. *See id*.; *see also Shaw*, 544 S.W.2d at 499-500 (where evidence supports an inference that a land owner had the appearance of control, a sham contract will be found to exist and the subcontractor can be treated as a contractor in direct privity with the owner in the same manner as any other original contractor).

Trinity argues that it conclusively showed that Vineyard and TOKA can effectively control each other through ownership of voting stock, interlocking directorships, or otherwise and, as such, it is entitled to judgment as a matter of law that its constitutional lien is valid and enforceable. Specifically, Trinity refers us to its summary judgment evidence showing TOKA's general partner, TOKA, G.P., Inc., is run by Burk Collins and that Collins has the ability to shut down TOKA if he wanted to make that decision on his own. Collins can require TOKA to take such actions such as bidding on contracts.

As to Vineyard, Trinity produced evidence showing that Vineyard is owned by Market Street Village, LTD., and that the general partner of Market Street Village, LTD. is Market Street Village, G.P. Collins is the sole director, president, and secretary of Market Street Village, G.P. Collins and a group of partners based in California are in charge of Vineyard. On behalf of Vineyard, Collins made the decision to hire TOKA as the general contractor for the shopping

21

center construction project. In the deposition testimony Trinity provided as evidence in support of its motion for summary judgment, Collins testified that he did not direct TOKA to submit a bid for that contract and stated that it was Danny Hooper who made that decision.

According to the deposition testimony of Danny Hooper, the corporate representative for TOKA, Collins made the decision that TOKA would submit a bid on Vineyard's shopping center construction project. Hooper testified that Vineyard had no clue that Trinity was the subcontractor on the project.

Trinity's summary judgment evidence further showed TOKA G.P. Inc., owns 1 percent of TOKA, Hooper owns 49 percent of TOKA, and Collins and his wife own 50 percent of TOKA. The articles of incorporation show that Vineyard, TOKA, and TOKA, G.P. have the same business address.

Vineyard responds that Trinity has not established that Vineyard can effectively control TOKA for purposes of the sham contract provision. Vineyard maintains that the trial court's denial of Trinity's motion for summary judgment was supported by evidence that raised a fact question. Vineyard points to deposition testimony from Collins in which he testified that his only role in TOKA is as an investor, he did not direct TOKA to submit a bid on Vineyard's shopping center construction project, he treats TOKA like any other general contractor, he was not aware that Trinity performed the work at the shopping center, and that he has a fiduciary duty to his partners at Vineyard to treat TOKA like any other contractor. Additionally, Vineyard refers us to Collins' affidavit stating that he does not control the actions or business decisions of TOKA and that he does not have a role in the daily operations of TOKA.

Because there is evidence in the record that supports an inference that Vineyard could

22

effectively control TOKA, we conclude that there is evidence in the record that creates a genuine issue of material fact as to whether a sham contract exists such that Trinity can qualify as an original contractor under Section 53.026. *See Shaw*, 544 S.W.2d at 499-500 (where evidence supports an inference that a land owner had the appearance of control, a sham contract will be found to exist and the subcontractor can be treated as a contractor in direct privity with the owner in the same manner as any other original contractor). Accordingly, we remand this issue to the trial court for further proceedings. Issue Four is sustained.

## CONCLUSION

We reverse the portions of the judgment of trial court granting Vineyard's counterclaim for a declaratory judgment and awarding Vineyard attorney's fees, and render judgment that Vineyard's declaratory judgment is denied. We remand this cause to the trial court to reconsider the issue of attorney's fees and for further proceedings consistent with this opinion. We affirm the trial court's judgment as to TOKA.


GUADALUPE RIVERA, Justice

November 6, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

23