

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00346-CV

CITY OF FOREST HILL, TEXAS, AND BRIGETTE MATHIS

APPELLANTS

V.

MICHIELLE BENSON, IN HER OFFICIAL CAPACITY AND INDIVIDUALLY

APPELLEE

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-290222-17

----------

## OPINION

----------

### I. INTRODUCTION

In this dual-office-holding case, Appellants City of Forest Hill and Brigette Mathis appeal a final declaratory judgment with permanent injunction and attorney's fees in favor of Appellee Michielle Benson, in her official capacity and individually. The parties primarily dispute which of two election-code provisions applied after the Attorney General opined that Benson's dual roles were

incompatible—election code section 141.033, in which case Benson would retain the office that she applied for first (Forest Hill City Council, Place 3), or election code section 201.025, in which case Benson would retain the office that she was sworn into second (Forest Hill Library Board of Trustees, Place 5). *See* Tex. Elec. Code Ann. §§ 141.033(a), (b), 201.025 (West 2010). The trial court sided with Benson and applied section 141.033.

Appellants argue that the trial court erred by premising its declaratory relief on section 141.033 because the validity of Benson's applications became moot once she was elected and because section 201.025 applies. We conclude and hold that Appellants' mootness argument is based on an inapposite statute and that section 201.025 has no application on these facts. Because Appellants' remaining two issues challenging the injunctive relief and attorney's fees are contingent upon a favorable outcome on their first issue, we will affirm.

## II. BACKGROUND

The City is a duly-organized municipality governed by a seven-member city council that is elected at-large. Governed by a board of trustees, the City's public library is a library district established pursuant to an election under chapter 326 of the local government code.

On January 22, 2016, Benson signed an application for a place on the May 7, 2016 ballot for Place 3 of the Forest Hill City Council and an application for a place on the same ballot for Place 5 of the Forest Hill Library Board of Trustees. The City Secretary signed that she received both applications on

2

February 17, 2016. Benson filed the city-council application before she filed the library-board application. The City did not prohibit Benson from running for both offices, her name subsequently appeared on the ballot as a candidate for both offices, and she was elected to both offices. On May 17, 2016, Benson took the oath of office for both positions; she was sworn in first as a city-council member and second as a library-board trustee.[1]

At its meeting on June 7, 2016, the city council expressed concern whether Benson could legally serve in both offices at the same time. On Benson's motion, the city council decided to seek an opinion from the Attorney General on the propriety of Benson's serving in both offices simultaneously.[2]

On January 3, 2017, the Attorney General issued an opinion in which he concluded that given the potential for conflict between the City and the library district over each entity's presumed effort to maximize its share of the statutorily-limited 2% sales and use tax, the offices of city-council member and library-district trustee are incompatible under the common-law doctrine of conflicting-loyalties incompatibility. *See* Tex. Att'y Gen. Op. No. KP-0125 (2017). Regarding Benson's status, the Attorney General noted that "qualification for and acceptance of a second incompatible office operates as an automatic resignation

---

[1]There is no indication in the record whether the interval between the oaths was seconds, minutes, or hours.

[2]The city attorney forwarded the letter to the Tarrant County District Attorney, who forwarded it to the Attorney General.

3

from the first" and, therefore, that "in qualifying for the second office of library district trustee, [Benson had] effectively resigned from the office of city council." *Id.* The opinion mentioned neither election code section 141.033 nor section 201.025.

After receiving the Attorney General's opinion, the city council noticed a special meeting for January 6, 2017, to address the opinion. Benson requested that the meeting be postponed until she returned to town, but it proceeded in her absence, and the city council voted to accept Benson's deemed resignation from the city council and to appoint Appellant Brigette Mathis to fill the vacancy created by the resignation.

In addition to a claim for a violation of the Texas Open Meetings Act and a request for injunctive relief, Benson sued Appellants for a declaration that the City's purported acceptance of her "effective resignation" was null and void, that she had never resigned, and that she is the "legally elected and qualified incumbent in the office of City Council, Place 3, City of Forest Hill Texas." The trial court temporarily enjoined the City from giving effect to the city council's actions at the meeting on January 6, 2017, and after a bench trial, it signed a first amended final judgment ordering the following:

> 1. The action by the City Council of the Defendant City of Forest Hill, Texas on January 6th, 2017, declaring that Plaintiff Benson "effectively resigned" from the City was and is null and void, ab initio;

> 2. The action by the City Council and Defendant City of Forest Hill on January 6th, 2017 in appointing Defendant Brigette

4

Mathis as successor to Plaintiff Benson's Council Position, Place 3, was and is null and void, ab initio[.]

The trial court also permanently enjoined the City from interfering with Benson's occupation of Place 3 of the city council, awarded Benson attorney's fees, and issued findings of fact and conclusions of law, which included the following conclusions:

1. Texas Election Code Section 141.033 titled Filing Applications for More than One Office Prohibited. Specifically it states, "(a) A candidate may not file applications for a place on the ballot [for two or more offices] that are not permitted by law to be held by the same person. (b) If a person files more than one application for a place on a ballot in violation of [this] section, each application filed subsequent to the first one is invalid." V.T.C.A. Election Code Section 141.033 (a) and (b).

2. The undisputed evidence is that Dr. Benson filed the application for City Council first. Therefore, the Office of City Council, Place 3, was the only office for which Dr. Benson properly filed, elected, and took an oath to serve.

3. Under that section, her application for election to the Library Board, her second filing, was invalid, and she was never properly elected to the Library Board[.]

4. Dr. Benson never filed a proper application for a place on the ballot for the Library Board, so she does not hold, never has properly held, that position. Incompatibility of office does not exist.

5. Defendants['] reliance on Election Code Section 201.025 . . . is unavailing. . . .

6. Neither the Attorney General's Opinion nor Defendants' argument based on Section 201.025 address the validity of Benson's application for the Library Board, her second application. Section 141.033 must be considered before the issue of the post-election oath of office should be considered.

5

7. The action by the City Council . . . on January 6th, 201[7] declaring that Plaintiff Benson had "effectively resigned" from the City Council was and is null and void, ab initio.

8. The Action by the City Council of Defendant City on January 6th, 2017 in appointing Defendant Brigette Mathis as successor to Plaintiff Benson's Council position, Place 3, was and is null and void, ab initio.

Appellants then perfected this appeal.[3]

### III. DECLARATORY JUDGMENT

Appellants argue in their first issue that the trial court misinterpreted the election code by declaring, consistent with election code section 141.033, that Benson's second-filed application for library-board trustee was invalid because under election code section 141.034, the validity of Benson's application for that position could have only been questioned before the election. Because no such question was timely raised until after Benson had assumed the position,

---

[3]In its amended final judgment, the trial court stated that it agreed with the Attorney General's opinion that a conflict existed between Benson's two offices. Benson opines similarly in her brief, acknowledging that the Attorney General's opinion "is correct as to incompatibility." But the judgment also states that "the City Council position was the only office for which [Benson] was properly filed and elected to serve. With Plaintiff only being properly elected to one office, there is no conflict and no incompatibility." Conclusion of law number 4 states the same in substantially similar terms, including that "[i]ncompatibility of office does not exist." The statements are seemingly contradictory but, we think, also reconcilable. Benson and the trial court appear to have two different things in mind when they generally allude to incompatibility. There is no dispute that a conflict existed when Benson held the two offices. However, the trial court determined, and Benson contends on appeal, that she never properly held the trustee position because she never filed a valid application for that office. Under that scenario, so goes the reasoning, there is no incompatibility. Whatever the case, Appellants raise no complaint about the statements.

Appellants posit that any argument relating to the validity of her application is moot. Appellants further contend that because Benson was elected and sworn into both offices, the trial court should have applied election code section 201.025 and the common-law doctrine of incompatibility to conclude that Benson effectively resigned her city-council position once she was sworn into the trustee position. Benson responds that neither section 141.034 nor section 201.025 have any application under the facts here. Guided by our well-established rules of statutory construction, we agree with Benson.

The Uniform Declaratory Judgments Act generally permits a person who is interested under a deed or other contract, or whose rights, status, or other legal relations are affected by a statute or contract, to obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015). Its purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* § 37.002(b) (West 2015).

We review declaratory judgments under the same standards as other judgments and decrees and look to the procedure used to resolve the issue at trial to determine the appropriate standard of review. *See id.* § 37.010 (West 2015); *Trinity Drywall Sys., LLC v. Toka Gen. Contractors, Ltd.*, 416 S.W.3d 201, 207 (Tex. App.—El Paso 2013, pet. denied). When, as here, a declaratory judgment is entered after a bench trial, we review the trial court's conclusions of law de novo. *Trinity Drywall Sys.*, 416 S.W.3d 207.

7

Appellants do not dispute the underlying fact findings upon which the trial court based its decision (findings of fact 2–21); rather, they challenge the trial court's legal conclusions based on those facts (conclusions of law 2–8).[4] We review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.).

The parties' arguments require us to construe statutes. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent first and foremost in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011(a) (West 2013).

---

[4]Appellants do not expressly challenge any of the trial court's conclusions of law, but judging by their arguments, we assume that they challenge conclusions 2–8.

## A.    Section 141.034 is inapposite

Entitled "Filing Applications for More Than One Office Prohibited," election code section 141.033 provides in relevant part,

> (a) A candidate may not file applications for a place on the ballot for two or more offices that:
>
> > (1) are not permitted by law to be held by the same person; and
>
> > (2) are to be voted on at one or more elections held on the same day.
>
> (b) If a person files more than one application for a place on a ballot in violation of this section, each application filed subsequent to the first one filed is invalid.

Tex. Elec. Code Ann. § 141.033(a), (b).[5]   Entitled "Limitation on Challenge of Application," election code section 141.034 provides in relevant part,

> (a) An application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day before any ballot to be voted early by mail is mailed to an address in the authority's jurisdiction for the election for which the application is made.
>
> (b) This section does not apply to a determination of a candidate's eligibility.

Id. § 141.034(a), (b).   There are several reasons why section 141.034 is inapposite and did not render the validity of Benson's library-board application moot once the election took place.

---

[5]There is no question that the election for both offices occurred on the same day.

9

First, the statute speaks to application challenges, but this cause involves no challenge to an application. Instead, it involves Benson's challenge to the city council's actions on January 6, 2017, and the trial court's decision to apply section 141.033 as a remedy in light of the Attorney General's uncontested incompatibility determination. The trial court's decision to apply section 141.033 did not somehow transform this cause into an application challenge.

Second, the time limitation contained in section 141.034(a) covers application challenges involving form, content, and procedure, but this cause has nothing to do with the form, content, or procedure of Benson's library-board application, nor do Appellants even so argue.

Third, section 141.033 speaks to a very specific factual situation that section 141.034 simply does not. Issues of form, content, and procedure can be resolved easily, and expediently, by cross-referencing election code section 141.031(a), which sets out in detail the form, content, and procedure required for an application. *Id.* § 141.031(a) (West Supp. 2017). By contrast, section 141.033 addresses the invalidity of an application that a person submits for a place on the ballot for an office that the person is "not permitted by law" to hold— a potentially challenging and intricate inquiry that, in all likelihood, will often require more than simply referencing a statutory checklist, as this case aptly demonstrates. *Id.* § 141.033(b). The legislature's decision to include a time limitation in section 141.034(a), but not in section 141.033, implicitly recognizes this reality.

10

Appellants argue that section 141.034(a) "ensures that there is finality in the election process," and while we agree, we cannot ignore that the statute ensures finality for only three specific types of application defects, none of which are implicated here. We also cannot ignore that in the very same statute, the legislature expressly *excluded* issues involving a candidate's eligibility from section 141.034(a)'s time bar, indicating an intent to implement time constraints for some, but not all, application-related matters.

Unlike the facts in this case, the caselaw that Appellants direct us to involved a city secretary's rejection of an application and petition, *see In re Crenshaw*, No. 05-17-00330-CV, 2017 WL 1292013, at *1 (Tex. App.—Dallas Apr. 7, 2017, orig. proceeding) (mem. op.), and an application challenge, *see In re Meyer*, No. 05-16-00063-CV, 2016 WL 375033, at *1 (Tex. App.—Dallas Feb. 1, 2016, orig. proceeding) (mem. op.). The caselaw is therefore unconvincing.

Section 141.034 has no application here. We overrule this part of Appellants' first issue.

## B.    Applying section 201.025 on these facts would lead to absurd results

Election code section 201.025 states, "If an officer accepts another office and the two offices may not lawfully be held simultaneously, a vacancy in the first office occurs on the date the person qualifies for the other office." Tex. Elec. Code Ann. § 201.025. Appellants suggest, and we have no reason to dispute, that the statute codifies the same common-law rule. *See State ex rel. Hill v.*

11

*Pirtle*, 887 S.W.2d 921, 930 (Tex. Crim. App. 1994) ("Under the common law, one person cannot simultaneously hold two incompatible offices, and the general rule is that the acceptance and qualification for a second office incompatible with the first office is an implied resignation of the first office."). The parties appear to agree that Benson qualified for the city-council office and the library-board office when she took the oaths for those offices.

Three words used in section 201.025 are particularly relevant here: "officer," "another," and "other." They indicate that the statute applies only to a person who is a current officeholder when she accepts and qualifies for the second office. This plain reading coincides with the supreme court's understanding and application of the common-law rule—"If a person *holding an office* is elected or appointed to *another* (where the two offices cannot be legally held by the same person) and he accepts and qualifies as to the *second*, such acceptance and qualification operate, ipso facto, as a resignation of the *former* office." *Pruitt v. Glen Rose ISD No. 1*, 126 Tex. 45, 49, 84 S.W.2d 1004, 1006 (1935) (emphasis added). Each of the notable cases on this topic involved a similar scenario. In *Pruitt*, Kugle qualified for district tax collector in November 1928 and took the oath of office for county tax collector in January 1929. *Id.* at 49, 84 S.W.2d at 1005. In *Thomas v. Abernathy County Line ISD*, Smith and Lindsey qualified as school trustees in April 1924 and as aldermen in September 1924. 290 S.W. 152, 152 (Tex. Comm'n App. 1927, judgm't adopted). And in *State ex rel. Kingsbury v. Brinkerhoff*, respondent qualified as city secretary on

12

April 13, 1885, and as recorder on April 14, 1885. 66 Tex. 45, 46, 17 S.W. 109, 110 (1886).

Unlike the parties' sequential holding and qualification for the offices in *Pruitt*, *Thomas*, and *Brinkerhoff*, Benson was elected to the city-council and library-board offices *on the same day*, and she took the oath of office and qualified for both offices *on the same day*. Thus, considering section 201.025's language in light of the caselaw authorities applying the same common law rule, as we may do, *see* Tex. Gov't Code Ann. § 311.023(4) (West 2013), Benson was not an "officer," as the legislature intended that term to be used in section 201.025, when she qualified for the "other" office.

Appellants try to sidestep the legislature's intent by pointing out that Benson nevertheless took the oath of office for the city council before she took the oath of office for the library board, but construing the term "officer" to include a person who only became an officer on the same day that she qualified for the "other" office would be absurd—it cannot be presumed that Benson intended to resign her city-council position on the very same day that she took the oath of office for that position. *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) ("We . . . interpret statutes to avoid an absurd result."); *see also* Tex. Gov't Code Ann. § 311.021(3) (West 2013) (providing that in enacting a statute, it is presumed that "a just and reasonable result is intended").

Like election code section 141.034, section 201.025 has no application on these facts. We overrule the remainder of Appellants' first issue.

13

**C.    Response to the dissent**

The dissent opines that section 141.033 is no more applicable on these facts than section 141.034 is because no "law"—as that term is used in section 141.033(a)(1)—prohibited Benson from simultaneously holding both the city-council and library-district-trustee positions when she filed her ballot applications. This argument is nowhere to be found in the City's briefing, a reality that the dissent expressly acknowledges in its footnote 3—"I recognize that the City did not argue the inapplicability of section 141.033 on this basis." Nor can we agree that a de novo standard of review compels us to review unassigned error. The dissent laments that our responsive analysis leaves an "analytical hole explaining why section *141.033* applies," but the City presumably does not share the same concern, judging by its conspicuous decision to hinge its analysis on the applicability of section 141.034, rather than on the inapplicability of section 141.033(a)(1).

The dissent's argument also suffers from an unrealistic expectation of specificity. It cites Texas constitution article XVI, section 40 as an example of a "law" that precludes someone from holding two given offices ("No person shall hold or exercise at the same time, more than one civil office of emolument . . . ." Tex. Const. art. XVI, section 40(a)), but it then departs from the relatively low level of specificity with which the provision is understandably drafted and concludes that in this case, no "law" prohibited Benson from simultaneously holding the specific positions of city-council member and library-district trustee.

14

By construing the term "law" so narrowly, and with such a high degree of specificity, the dissent effectively guarantees the outcome that it seeks to reach, impliedly placing upon the legislature the heavy burden of crafting an extensive list of positions that are prohibited from being held simultaneously.

In any event, the plain and ordinary meaning of the undefined term "law," as it is used in section 141.033(a)(1), is certainly broad enough to encompass not only "some statute, constitutional provision, rule, ordinance, or regulation," as the dissent construes the term, but also the Texas common law, which generally remains a viable source of authority absent express statutory abrogation. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000). Impliedly recognizing this—and likely explaining why the City chose not to focus its first issue on section 141.033(a)(1)'s term "law"—neither side contests that the common law prohibited Benson from simultaneously holding both positions; instead, they dispute the remedy to be applied under the unique facts of this case.

As for our section 201.025 analysis, the dissent reasons that "[n]either the statute nor the common law suggests that one must have been in office for some minimum time period before the effective-resignation principle comes into play," but we can reasonably conclude that both do. We showed above that the dispositive caselaw applying the common-law doctrine of conflicting-loyalties incompatibility has calculated the timeframe between when an officer qualifies for the first office and when she qualifies for the second office in increments of no

15

less than a day—not also in hours, minutes, or seconds.  Presuming that the legislature was aware of this aspect of the caselaw when it enacted the statute, as we must, *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 596 (Tex. 2001), and construing the statute in light of the caselaw authorities applying the same common law rule, as we may do, *see* Tex. Gov't Code Ann. § 311.023(4), it is both just and reasonable to afford section 201.025 a similar construction.  *See id.* § 311.021(4).

## IV. INJUNCTIVE RELIEF AND ATTORNEY'S FEES

In their second issue, Appellants argue that the trial court erred by issuing the permanent injunction because it erred by granting Benson declaratory relief. In their third issue, Appellants ask us to remand the issue of attorney's fees to the trial court if we reverse its judgment.  Having overruled Appellants' first issue, we also overrule their contingent second and third issues.

## V. CONCLUSION

Having overruled Appellants' three issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  WALKER, MEIER, and KERR, JJ.

KERR, J., filed a dissenting opinion.

DELIVERED:  July 12, 2018

16